GREENBERG TRAURIG, LLP
MARK D. KEMPLE (SBN 145219)
MICHAEL A. WERTHEIM (SBN 291228)
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
TEL:  310-586-7700 FAX: 310-586-7800
Email: kemplem@gtlaw.com
        wertheimm@gtlaw.com

Attorneys for Defendant
PERFORMANCE TEAM HOLDINGS INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TASHAVEA WALKER, individually and on behalf of other individuals similarly situated,<br><br>       Plaintiff,<br><br>v.<br><br>BARRETT BUSINESS SERVICES, INC., a Maryland corporation; PERFORMANCE TEAM HOLDINGS, INC., a California corporation; and DOES 1 through 100, inclusive,<br><br>      Defendants. | CASE NO.   2:20-cv-8566<br><br>**DEFENDANT PERFORMANCE TEAM HOLDINGS INC.'S NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. § 1332(d)(2) (CAFA)**<br><br>Removal Filed:      September 18, 2020<br>State Action Filed: June 2, 2020 |

**TO THE COURT, PLAINTIFF, AND HER ATTORNEYS OF RECORD**

**PLEASE TAKE NOTICE** that Defendant Performance Team Holdings Inc. ("PT" or "Defendant") hereby removes the above-captioned action, *Tashavea Walker v. Barrett Business Services, Inc., et al.*, Case No. 20STCV21241 (the "Action") from the California Superior Court for the County of Los Angeles to the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1332(a), 1332(d), and 1446(b) on the grounds articulated below.

ACTIVE 52601622v2

**VENUE**

1.      The action was filed in the Superior Court of the State of California for the County of Los Angeles. Venue properly lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 84(c), 1391, 1441(a).

**SERVICE ON THE STATE COURT**

2.      Pursuant to 28 U.S.C. § 1446(d), contemporaneously with the filing of this Notice of Removal in the United States District Court for the Central District of California, written notice of such filing will be given by the undersigned to Plaintiff's counsel of record, and a copy of the Notice of Removal will be filed with the Clerk of the Los Angeles County Superior Court.

**COMPLIANCE WITH STATUTORY REQUIREMENTS**

3.      In accordance with 28 U.S.C. § 1446(a), true and correct copies of all pleadings, process, and orders in the state court file (with the exception of the Complaint and First Amended Complaint which are attached hereto respectively as Exhibits A and B) are attached hereto as <u>Exhibit C</u>.

**PLEADINGS, PROCESS AND ORDERS**

4.      On June 2, 2020, Plaintiff Tashavea Walker ("Plaintiff"), on behalf of herself and others similarly situated, filed a complaint in the Superior Court for the County of Los Angeles, captioned *Tashavea Walker v. Barrett Business Services, Inc., et al.*, Case No. 20STCV21241. A true and correct copy of the Summons and Complaint filed in Los Angeles County Superior Court is attached hereto as <u>Exhibit A</u>.

5.      On September 16, 2020, Plaintiff, on behalf of herself and others similarly situated, filed a First Amended Complaint ("FAC") in the Superior Court for the County of Los Angeles, with the same caption as her Complaint. A true and correct copy of the FAC is attached hereto as <u>Exhibit B.</u>

6.      The FAC seeks to allege nine separate causes of action for: (1) failure to pay all wages; (2) short meal breaks; (3) short rest breaks; (4) inaccurate wage

1

DEFENDANT'S NOTICE OF REMOVAL

statements; (5) waiting time penalties; (6) Failure to adopt standards that minimize excessive indoor heat; (7) failure to reimburse business expenses; (8) violation of Business and Professions Code section 17200 *et seq*.; and (9) violation of the Private Attorneys General Act of 2004 ("PAGA").

## TIMELINESS OF THE REMOVAL

7.     This removal is timely.  As the Ninth Circuit Court of Appeal has held and clarified, CAFA removal is timely at any time so long as (1) the face of the complaint does not plainly allege all elements needed for traditional diversity (including the amount in controversy), and (2) plaintiffs have not served some other "paper" which concedes all elements needed for traditional diversity.  *See Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125–26 (9th Cir. 2013) (a removing defendant may remove "on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines" set forth in 28 U.S.C. § 1446(b)(1) and (b)(3); "a defendant's subjective knowledge cannot convert a non-removable action into a removable one such that the thirty-day time limit of § 1446(b)(1) or (b)(3) begins to run against the defendant"); *see also Rea v. Michaels Stores Inc.*, 742 F. 3d 1234, 1238 (9th Cir. 2014) (reaffirming *Roth* holding; "We also recently held in *Roth v. CHA Hollywood Medical Center, L.P.*, that the two 30-day periods are not the exclusive periods for removal.  720 F.3d 1121, 1124–25 (9th Cir. 2013).  In other words, as long as the complaint or 'an amended pleading, motion, order or other paper' does not reveal that the case is removable, the 30-day time period never starts to run and the defendant may remove at any time."); *see also Taylor v. Cox Commc'ns. California, LLC*, 673 F. App'x 734, 735 (9th Cir. 2016) ("We also hold that Defendants' second Notice of Removal was timely. 'A CAFA case may be removed [by a defendant] at any time, provided that neither of the two thirty-day periods under § 1446(b)(1) and (b)(3) has been triggered.'").

2

DEFENDANT'S NOTICE OF REMOVAL

8.     Here, neither the Complaint nor the FAC plainly allege all elements needed for removal, and Plaintiff has not served some other "paper" which concedes all elements needed for removal.  For example, no amount in controversy and minimum diversity is, or has been, stated in any paper received from Plaintiff and plaintiff has not alleged.  This removal is therefore timely.

## NATURE OF THIS REMOVAL PLEADING

9.     PT hereby provides "a short and plain statement of the grounds for removal" pursuant to 28 U.S.C. § 1446(a). In this regard, a notice of removal "need not contain evidentiary submissions." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547. 551 (2014).  Rather, "if the plaintiff contests the defendant's allegation . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 553-54.  As recently held by the Ninth Circuit:

> "when a notice of removal plausibly alleges a basis for federal court jurisdiction, a district court may not remand the case back to state court without first giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdictional requirements are satisfied."

*Arias v. Residence Inn*, No. 19-55803, 2019 U.S. App. LEXIS 26561, at *10 (9th Cir. Sep. 3, 2019) (rejecting *sua sponte* remand).  In the event that the Court requires that PT prove the facts alleged in this pleading, or to otherwise establish jurisdiction, PT is prepared to do so.  Similarly, Defendant is prepared to establish this Court's jurisdiction in response to a motion to remand filed by Plaintiff seeking to challenge the factual basis for this Court's jurisdiction, or in response to a Court order.

## STATEMENT OF THIS COURT'S JURISDICTION

10.     Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given to them. *Colorado River Water Conservation Dist. v. U. S.*, 424

3

DEFENDANT'S NOTICE OF REMOVAL

U.S. 800, 817 (1976).  *See also Cohens v. Virginia*, 19 U.S. 264, 404, 5 L. Ed. 257 (1821) (federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given"); *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716, 116 S. Ct. 1712, 135 L. Ed. 2d 1 (1996) (federal courts "have a strict duty to exercise the jurisdiction that is conferred upon them by Congress").

11.    Further, Class Action Fairness Act of 2005 ("CAFA") jurisdiction – at issue here – is a favored form of jurisdiction and uniquely subject to no antiremoval presumption.  Through CAFA, Congress has expressed its "overall intent to strongly favor the exercise of federal jurisdiction over class actions with interstate ramifications," *Jordan v. Nationstar Mort. LLC,* 781 F.3d 1178, 1183 (9th Cir. 2015) (*quoting Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 554 (2014), with "all doubts resolved in favor of exercising jurisdiction over the case." *Dutcher v. Matheson*, 840 F.3d 1183, 1190 (10th Cir. 2016).  *See also Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006) (same); *Reece v. AES Corp*., 638 Fed.Appx. 755, 767–68 (10th Cir. 2016) (same).  Unlike other forms of removal jurisdiction, "no antiremoval presumption attends cases invoking CAFA."  *Dart Cherokee,* 135 S. Ct. at 554.  *See also Allen v. Boeing Co.*, 784 F.3d 625, 633 (9th Cir. 2015) ("there was no presumption against [CAFA] removal jurisdiction"; CAFA should be read "with a strong preference that interstate class actions should be heard in a federal court").

12.    This Court has original jurisdiction over this case under CAFA, 28 U.S.C. § 1332(d), and this case may be removed pursuant to the provisions of 28 U.S.C. § 1441(a).  Specifically, this is a putative civil class action wherein: (1) the proposed class contains at least 100 members; (2) no Defendant is a state, state official or other governmental entity; (3) the total amount in controversy for all putative class members exceeds $5 million; and (4) there is requite diversity among the parties to this action.  Therefore, CAFA authorizes removal of such actions in accordance with 28 U.S.C. §

4

1446, and this Court should exercise the jurisdiction given to it under CAFA.

## **The Proposed Class Contains At Least 100 Members**

13.     Plaintiff's proposed classes contain in excess of 100 members.  Plaintiff brings this action on behalf of a number of classes and subclasses.  For example, Plaintiff brings this action on behalf of "[a]ll persons who have been, or currently are, employed by Defendants and who held, or hold, job positions which Defendants have classified as 'non-exempt' employees in the State of California." [Ex. B. FAC, ¶ 6, 63.] She alleged that each Defendant is the "agent, employee, alter ego and/or joint venturer" of the other, such that each had "control and direction" of the class members and thereby each employed them. (*Id*. ¶¶18-21, 28, 30, 75, 78.)  Though Defendant in no way admits that these allegations are accurate, they are to be accepted for purposes of this removal.  Accepting these allegations for purposes of removal only, as Defendant does throughout the balance of this removal pleading, Defendants have employed in California at PT's facilities substantially more than 100 persons as non-exempt employees within four years of the filing of this action.  As such, the membership in this putative class exceeds 100 persons.

## **Defendant Is Not A Governmental Entity**

14.     Defendant is not a state, state official, or other governmental entity.

## **Minimal Diversity Exists**

15.     Title 28 U.S.C. §§ 1332(d)(2), provides that CAFA's minimum diversity requirement is satisfied "any member of a class of plaintiffs is a citizen of a State different from any defendant…."

16.     Defendant Barrett Business Services, Inc. ("BBSI") is a citizen of Maryland and Washington, and is not a citizen of California. For diversity purposes, a corporation "shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). To determine a corporation's principal place of business, courts apply the "nerve

DEFENDANT'S NOTICE OF REMOVAL

center" test, which deems the principal place of business to be the state in which the corporation's officers direct, control, and coordinate the corporation's activities. *The Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010).  A corporation's principal place of business will typically be where the corporation maintains its headquarters. *See id.*

17.     BBSI is a primary defendant, against whom Plaintiff is seeking significant relief. As Plaintiff alleges, BBSI is a corporation incorporated under the laws of the State of Maryland. [See FAC ¶ 14.]  BBSI's corporate headquarters, where its officers reside and direct, control, and coordinate the corporation's activities, is in Washington. These statements are true both at the time of the filing of the original Complaint in this action, at the time the FAC was filed, and are true now.  BBSI is therefore only a citizen of the States of Maryland and Washington.  The States of Maryland and Washington are not the forum of this action.

18.     Defendant PT was incorporated in the state of California.  Further, its administrative and executive functions are performed at its headquarters, located in California, and California is the state of its principal place of business.  As such, at the time the action was filed, PT was a citizen of California only, and of no other state.[1]

19.     Many putative class members are citizens of California, and not Maryland and Washington (where BBSI is a citizen).  Plaintiff is a resident of California, who worked in California for over two years during the alleged Class Period. [FAC ¶ 13.] Defendant is also aware of a putative class member (who worked as a non-exempt employee in a PT facility in the state of California within four years prior to the filing

---

[1] Strategic Staffing Solutions, Inc., a Michigan corporation, was once a defendant in this action.  However, Strategic Staffing Solutions, Inc, was dismissed from this action by order of the state court dated September 1, 2020.  Plaintiff's First Amended Complaint makes no mention of Strategic Staffing Solutions, Inc.[2] Defendant denies any liability to Plaintiff or to the putative classes that she seeks to represent, and denies that Plaintiff or the putative class members are entitled to recover any of the relief requested in the Complaint. Defendant in no way concedes by this removal that Plaintiff's claims and alleged putative classes may be certified for class treatment pursuant to Fed. R. Civ. P. 23.

DEFENDANT'S NOTICE OF REMOVAL

of this action), who at the time of the filing of the Complaint, the filing of the FAC, and the filing of this Removal, was and is a citizen of the United States and of the State of California, and not of Maryland and Washington.  At each of those times, this putative class member was employed in California, maintained a residence in California, held a California driver's license, used a California polling place to vote in proximate elections, had immediately family in California, paid income and property tax in California, registered his automobile in California, held a bank account in California, intended to reside in California indefinitely, and considered himself to be a citizen of California.  None of these statements would be true concerning the states of Maryland and Washington.  This person was born in California and has been a U.S. Citizen his entire life.  In short, this putative class member is and was at these times a citizen of California and no other state.

20.    Because one or more putative class members is a citizen of the state of California only, and a primary defendant (BBSI) is a citizen of Maryland and Washington (and not California), at least one putative class member is diverse from a defendant and CAFA's minimal diversity requirement is met. 28 U.S.C. § 1332(d) (2); *Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1276 (9th Cir. 2017)).

## **The Amount Placed in Controversy on the Putative Class Claims Exceeds $5,000,000**

21.    The amount in controversy is measured through the date of removal, not merely as of the date of the filing of the complaint (*Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417-18 (9th Cir. 2018)), with the exception that attorney fees (also within the amount in controversy) are projected forward and through the date of trial. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 795 (9th Cir. 2018).

22.    The amount in controversy concerns "what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Korn v. Polo Ralph Lauren Corporation*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (quoting

DEFENDANT'S NOTICE OF REMOVAL

*Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)).  "In measuring the amount in controversy, 'a court must assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" *Korn*, 536 F. Supp. 2d at 1205 (quoting *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).  Further, "in assessing the amount in controversy, a removing defendant is permitted to rely on a chain of reasoning that includes assumptions . . . if it is founded on the allegations of the complaint."  *Arias*, 2019 U.S. App. LEXIS 26561 at *11-12 (9th Cir. 2019).  The amount in controversy includes potential general and special damages, and penalties, as well as attorney's fees if recoverable by statute or contract.  *See*, *e.g.*, *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 449–50 (S.D. Cal. 1995); *Miller v. Michigan Millers Ins. Co.*, 1997 WL 136242 at *4–5 (N.D. Cal., 1997); 28 U.S.C. §§ 1332(d)–(e), 1453, 1711–15.[2]

23.     Further, in calculating the amount placed in controversy, defenses that a defendant may assert—such as a statute of limitation—are not considered. *Riggins v. Riggins*, 415 F.2d 1259, 1262 (9th Cir. 1969) ("[T]he possibility of such a defense being valid does not affect the jurisdiction of the district court to hear and determine the controversy"); *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010) (that "a defendant might have a valid defense that will reduce recovery to below the jurisdictional amount does not mean the defendant will ultimately prevail on that defense"); *Flores v. Marriott Resorts Hosp. Corp.*, 2019 U.S. Dist. LEXIS 6604, *9 (C.D. Cal. Jan. 7, 2019) ("affirmative defenses that have not been asserted at the time of removal are not relevant for calculating the amount in

---

[2] Defendant denies any liability to Plaintiff or to the putative classes that she seeks to represent, and denies that Plaintiff or the putative class members are entitled to recover any of the relief requested in the Complaint. Defendant in no way concedes by this removal that Plaintiff's claims and alleged putative classes may be certified for class treatment pursuant to Fed. R. Civ. P. 23.

DEFENDANT'S NOTICE OF REMOVAL

controversy for removal purposes"; "Plaintiffs' claims are not limited to the year prior to filing this action for purposes of calculating the jurisdictional amount in controversy"); *Pagel v. Dairy Farmers of Am. Inc*, 2013 WL 12166177, *6 (C.D. Cal. July 9, 2013) (the Ninth Circuit has admonished against preliminary adjudication of affirmative defenses and defenses should not pose a barrier to jurisdiction); *Gutierrez v. Stericycle, Inc.*, 2017 WL 599412, *15 (C.D. Cal. Feb. 14, 2017) (affirmative defenses may not be considered in calculating the amount in controversy); *Hernandez v. Towne Park, Ltd.*, 2012 WL 2373372, *10 (C.D. Cal., June 22, 2012) ("the fact that [defendant] may assert a limitations defense does not limit the relief sought in the complaint"); *Lara v. Trimac Transp. Services (Western) Inc.*, 2010 WL 3119366, *3 (C.D. Cal., August 6, 2010) ("affirmative defenses . . . may not be invoked to demonstrate that the amount in controversy is actually less than the jurisdictional limits.").

24.     Though Defendant concedes no liability on Plaintiff's claims, assuming that all of Plaintiff's allegations are true and that Plaintiff will gain a full recovery on them, Plaintiff's putative class claims place in controversy a sum greater than $5,000,000.

25.     The FAC seeks to allege nine separately titled causes of action for: (1) failure to pay all wages; (2) short meal breaks; (3) short rest breaks; (4) inaccurate wage statements; (5) waiting time penalties; (6) failure to adopt standards that minimize excessive indoor heat; (7) failure to reimburse business expenses; (8) violation of Business and Professions Code section 17200 *et seq*.; and (9) violation of PAGA.  Plaintiff pursues each of these claims on behalf of the putative class.

26.     <u>Failure to Pay for All Hours Worked</u>. Plaintiff concludes that PT and defendant BBSI (collectively "Defendants") are joint employers, and that each is responsible for any liability arising from the employment relationship averred in the FAC.  [*See e.g.*, FAC ¶¶ 19-21.] Plaintiff's FAC asserts "systemic" violations of the

Labor Code, including a "system of willful violations," and asserts Defendants maintained policies and practices that required Plaintiff and the putative class to work off-the-clock.  [FAC ¶¶ 2, 4, 7, 24, 30, 31, 32, 75.]

27.    Plaintiff contends that Defendants, through a "uniform" policy, subjected Plaintiff and the putative class "to security checks, and lengthy walk times," by which "all hourly employees are subject to a security check upon arriving for a shift, before leaving for their meal break and at the end of their shift after they had already clocked out." [FAC ¶ 30, 75.] Plaintiff alleges further that "[h]ourly employees were and are required to wait in line and be searched…and are required to leave their work station and walk to the security check, approximately a three-minute wait." [FAC ¶¶ 30, 75]. Plaintiff alleges that the "daily uncompensated waiting time" in the security line is approximately 3 minutes per security check, which occurs three times per day. [FAC ¶¶ 30, 32, 73, 75, 77.] Plaintiff also alleges employees arrive for their shift and leave for meal breaks at the same time, creating "lengthy lines and backups for employees," and as a result "employees are forced to wait in these lines and undergo lengthy off-the-clock security screenings" but were not compensated for straight hours or overtime hours. [FAC ¶¶ 30, 31, 76.] Plaintiff alleges the security screenings were "necessary to the employee's primary work and done solely for Defendants' benefit" and that Plaintiff was required to "perform these integral and indispensable duties without proper wages or overtime compensation." [FAC ¶ 30, 31.]

28.    Though any statute of limitations defense is not taken into account in calculating the amount in controversy, even limiting the calculation to the period four years before the filing of the initial complaint, there were in excess of 500,000 shifts worked by putative class members in California at a PT facility in the four years preceding the filing of the complaint.  Of those, the vast majority of the shifts (more than 400,000) exceeded 5 hours, such that a meal period authorization may be

DEFENDANT'S NOTICE OF REMOVAL

ACTIVE 52601622v2

required.  Plaintiff also contends that some of this off the clock work was overtime [*see e.g.*, FAC ¶¶ 31, 33], which would increase these figures.

29.     However, if we use only straight time, and ignore the meal periods egress and ingress, and using the average rate of pay during this time period for putative class members exceeded $13.50 per hour.  Using the three-minute figure alleged by Plaintiff, this theory and allegations alone place in controversy in excess of $1,394,000 in unpaid wages, as follows: 500,000 shifts x 2 security screenings x .05 hours (3 minutes) x $13.5 = **$675,000**.[3]  If one did not take into account the statute of limitations or limit the "in excess of" figures above, these figures would increase.

30.     <u>Short Meal Breaks</u>.  Plaintiff concludes that for at least four years prior to this action, Defendants failed to provide meal breaks as required by law. [FAC ¶ 84.] Plaintiff alleges Class members' "meal breaks were routinely cut short, as Plaintiff and Class members had to walk five (5) minutes to and from the breakroom to their work stations" and if they left the premises, "they would have to wait in the security check line before leaving and upon their return." [FAC ¶ 92.] Accordingly, Plaintiff alleges Defendants "regularly failed" to provide Plaintiff and members of the Plaintiff Class with timely, uninterrupted thirty-minute meal periods for their first or second meal periods and failed to pay premium pay for each workday that a meal period was not permitted. [FAC ¶ 91.]  Though any statute of limitations defense is not taken into account in calculating the amount in controversy, Plaintiff expressly alleges that the complained-of acts occurred "[f]or at least four (4) years preceding the filing of this action" [FAC ¶ 84.] There were in excess of 400,000 shifts worked by putative class members in California at a PT facility that were greater than five hours in length (thereby qualifying under California law for a meal break).  As noted above, the average rate of pay during this time period for putative class members exceeded

---

[3] Including the meal period egress and ingress adds another $637,500, as follows: 400,000 shifts x 2 security screenings x .05 hours (3 minutes) x $13.5 = $540,000.

DEFENDANT'S NOTICE OF REMOVAL

ACTIVE 52601622v2

$13.50 per hour. Plaintiff asserts the clock was at least five minutes each way, which would result in a violation on every break, and that "throughout the relevant period," Defendant "regularly" failed to provide compliant meal periods. [FAC ¶¶ 35, 91.] Particularly given that the alleged violations are physical impediments (having to walk to begin the break and having to go through security to exit), Defendant can reasonably apply a 25% violation rate.[4] Plaintiff's meal period allegations therefore place "in controversy" in excess of $3,187,500 in premium meal premium payments, as follows: 400,000 shifts x $13.5 x. 0.25 = **$1,350,000.** If one did not take into account the statute of limitations or limit the "in excess of" figures above, these figures would increase.

31.     <u>Failure to Provide Rest Periods</u>.  Plaintiff concludes that Defendants failed to provide proper rest breaks because Defendants "failed to provide Plaintiff and Class Members the full ten (10) minutes of rest time prescribed by law" and that to reach a break area, Class Members "must walk a long distance, five (5) minutes each way… [which] reduces the amount of rest time." [FAC ¶ 100.] Plaintiff alleges that "Defendants provided a fifteen (15) minute rest break, however, ten (10) of these minutes were spent walking to the break room, thus, depriving Plaintiff and Class members of their entitled rest periods." [FAC ¶ 39.] Again, despite the limitations period being inapplicable and Plaintiff's allegations relating to period prior to four

---

[4] *See e.g., Agredano v. Sw. Water Co.,* No. CV 17-02627 SJO (Ex), 2017 WL 2985395, at *6 (C.D. Cal. May 30, 2017) (finding that the defendant's assumption of a 100% violation rate was proper in light of the complaint's allegation of "routinely" and that such terms are synonymous with "always"); *Vasam v. Laboratory Corp. of Am.,* No. 14cv2719 BTM(JMA), 2015 WL 4199287, at *3 (S.D. Cal. July 13, 2015) (assuming a 25% violation rate where the plaintiff alleged that class members "regularly worked off-the-clock [and] should have been compensated at an overtime rate"); *Mackall v. Healthsource Global Staffing, Inc.,* No. 16-cv-03810-WHO, 2016 WL 4579099, at *5 (N.D. Cal. Sept. 2, 2016) ("assumptions of one missed meal and break per pay period are reasonable in light of policy and practice allegations and allegations that defendants[ ] 'regularly' denied class member breaks") (collecting cases).

DEFENDANT'S NOTICE OF REMOVAL

years before the filing of the action, in the four years prior to the filing of the action there were in excess of 400,000 shifts worked by putative class members in a PT facility in California that were greater than 3.5 hours in length (thereby qualifying under California law for a rest break). [FAC ¶ 96.] As noted above, the average rate of pay during this time period for putative class members exceeded $13.50 per hour. Though there are no allegations that would warrant reducing the incident rate by 75%, even if one did so this places in controversy in excess of $12,750,000 in rest premium payments, as follows: 400,000 shifts x $13.5 x. 0.25 = **$1,350,000.** If one did not take into account the statute of limitations or limit the "in excess of" figures above, these figures would increase.

32.     <u>Failure to Timely Pay All Wages Due Upon Separation</u>.  Plaintiff also brings a derivative claim for Waiting Time Penalties, based on the foregoing failures to pay wages, as well as many other theories of unpaid wages, including a "pattern and practice" and regular failure to pay overtime (not quantified here).  [FAC ¶¶ 111-114.] Again, artificially limiting this claim to just three years before the action was filed, there were in excess of 1,500 putative class members whose employment ended in the four years preceding the filing of the complaint and who, per Plaintiff's allegations, were required to go through security without payment of wages allegedly in violation of wage/hour laws.  These persons worked on average in excess of 7.25 hours per work day.  Accordingly, given that Plaintiff contends that every employee was denied payment of earned wages at least once – and indeed in every shift – this theory alone places in controversy in excess of $4,404,375 in waiting time payments (per Labor Code section 203) as follows: 1,500 persons x $13.5 x 7.25 hours x 30 days = **$4,404,375**.  If one did not take into account the statute of limitations or limit the "in excess of" figures above, these figures would increase.

33.     <u>Plaintiff's Additional Claims</u>. The total of the sums calculated above exceeds **$7,779,375** in controversy.  Even then, the foregoing addresses only a portion

DEFENDANT'S NOTICE OF REMOVAL

*ACTIVE 52601622v2*

of the claims pursued by Plaintiff. It does not include, for example, Plaintiff's overtime allegations, inaccurate wage statement, reimbursement claims, failure to adopt standards to minimize excessive heat. Though we have not sought to calculate amounts in controversy on these claims, obviously they would place additional amounts in controversy.

34. <u>Attorneys' Fees through the Life of the Litigation</u>. Further, Plaintiff seeks class-wide recovery of statutory attorney fees. [*See e.g.*, FAC, Prayer for Relief 8.] The amount in controversy includes all reasonable attorneys' fees not merely through the date of removal, but through resolution of the action. *See Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1034 (N.D. Cal. 2002) ("Plaintiff insists that attorneys' fees are limited to those accrued at time of removal, maintaining that additional fees are too speculative. Plaintiff is mistaken. [In *Galt*] [t]he Ninth Circuit clearly . . . anticipated that district courts would project fees beyond removal."); *Ponce v. Med. Eyeglass Ctr., Inc.,* 2015 WL 4554336, at *3 (C.D. Cal. July 27, 2015) (adopting *Simmons* reasoning and holding that "the Court agrees with defendant that a conservative estimate of attorneys' fees likely to be incurred through the conclusion of this case properly factors into the amount in controversy determination"); *Sasso v. Noble Utah Long Beach, LLC,* 2015 WL 898468, at *5 (C.D. Cal. Mar. 3, 2015) (holding attorneys' fees through trial are properly included in amount in controversy consideration; "post-removal attorneys' fees . . . are part of the 'total amount at stake'"); *Sawyer v. Retail Data, LLC,* 2015 WL 3929695, at *3 (C.D. Cal. Apr. 29, 2015) (same).[5]

---

[5] *See also Pulera v. F&B, Inc.*, 2008 WL 3863489, at *4 (E.D. Cal. 2008) ("While the amount in controversy is determined at the time an action commences, where attorney's fees are recoverable by statute, this determination includes a reasonable estimate of the attorney's fees likely to be incurred."); *Brady v. Mercedes-Benz*, 243 F. Supp. 2d 1004, 1011 (N.D. Cal. 2002), ("[w]here the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus

35.     Based on past experience, the pendency of this action, the scope of the action, and the issues raised by the pleading, we reasonably estimate that Plaintiff's counsel will seek to recover up to six figures in fees in this action, or more.  *See e.g. Garnett v. ADT LLC,* 74 F. Supp. 3d 1332, 1338 (E.D. Cal. 2015) (in determining whether amount in controversy exceeded $5 million for purposes of CAFA removal the court found that that attorneys' fees estimation of 25 percent "is a reasonable one"; "this equates to a fee of approximately $1,016,200. The total amount in controversy thus exceeds $5 million.").  Based only on the claims set forth above and conservatively calculated, which total **$7,779,375** in controversy, and without regard to other relief sought including injunctive relief sought, a 25% fee recovery on such claims adds another **$1,944,843** to the quantified amount "in controversy."

36.     Plainly, the amount placed "in controversy" on these putative class claims exceeds $5,000,000.

## NO ADMISSION

37.     PT admits no liability to Plaintiff or to the putative classes he seeks to represent, does not admit that Plaintiff has stated a claim, does not admit that it was an employer of BBSI workers, does not admit that its acted as BBSI's agent, jonte venture, etc., does not admit that Plaintiff can recover on her theories and the statutes she cites, does not admit that Plaintiff is an adequate class representative for the putative classes that she seeks to represent does not admit that Plaintiff or the putative class members are entitled to recover the damages, penalties, and other relief requested in the Complaint or FAC, and does not here admit any of the allegations set forth in the

---

contributes to the amount in controversy.") (emphasis added); *Tompkins v. Basic Research LLC*, 2008 WL 1808316, at *4 (E.D. Cal. 2008) (the "amount in controversy includes a reasonable estimate of attorneys' fees likely to be incurred"); *Celestino v. Renal Advantage Inc.*, 2007 WL 1223699, at *4 (N.D. Cal. 2007) ("the amount in controversy includes not only damages accrued up to the time of removal, but also a reasonable assessment of damages likely to be accrued after the time of removal").

DEFENDANT'S NOTICE OF REMOVAL

*ACTIVE 52601622v2*

FAC.  Defendant also in no way admits that the instant action satisfies the requirements for class certification.

* * *

This action meets all of CAFA's requirements for removal, and this removal pleading is both timely and proper.  WHEREFORE, the action is hereby removed in its entirety to this Court from the Superior Court of the State of California, Los Angeles County.

Respectfully submitted,

Dated: September 18, 2020                              GREENBERG TRAURIG, LLP


By:   _/s/ Mark D. Kemple_____
Mark D. Kemple
Michael Wertheim
Attorneys for Defendant
Performance Team Holdings, Inc.

DEFENDANT'S NOTICE OF REMOVAL

ACTIVE 52601622v2